## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

**MICHAEL YOUNG**,

       Plaintiff,

v.

**WARDEN J.F. CARAWAY**,

       Defendant.

_____

**Civil No.: 05-1476 (JNE/JJG)**

**REPORT AND
RECOMMENDATION**

**JEANNE J. GRAHAM, United States Magistrate Judge**

This matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket No. 1) and Motion for Writ of Mandamus (Docket No. 2).  Petitioner claims the Bureau of Prisons ("BOP") has wrongly determined the date when he is eligible for transfer from prison to a Community Corrections Center or to home confinement (hereinafter collectively referred to as "CCC").  Respondent has filed a response to the petition (Docket No. 7) contending that consideration of Petitioner's transfer date has been properly determined, and that Petitioner is not entitled to any relief in this case.

This matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that Petitioner be granted a writ of habeas corpus that will require the BOP to reconsider his CCC assignment date.  The Court further recommends that in light of the Court's grant of Petitioner's writ of habeas corpus, in which the Court grants the relief sought by Petitioner in his Motion for Writ of Mandamus, said Motion be denied as

moot.

I.      **BACKGROUND**

Petitioner Michael Young is a prisoner at the Federal Prison Camp in Duluth, Minnesota.  He is serving a 50-month sentence for conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(b) and 846.  His current sentence was imposed on May 27, 2003, in the United States District Court for the District of Minnesota.

Petitioner is scheduled to be released from prison on January 28, 2007, if he earns all available good time credits.  He will be eligible for a transfer to a CCC (sometimes referred to as a half-way house), sometime prior to his scheduled release date, but Petitioner and the BOP disagree about when he will be eligible for such a transfer.

The BOP contends that Petitioner is not eligible for a CCC assignment until he has only ten percent of his prison term left to serve.  In this case, the BOP asserts that the Petitioner's ten percent date is September 19, 2006, which represents the earliest date he will be eligible for CCC placement under BOP regulations.  The BOP states that the Petitioner will likely be recommended and ultimately referred for transfer at that time for 131 days of CCC placement.  Finally, the BOP states this calculation is correct and properly calculated according the newly promulgated federal rules that went into effect February 14, 2005.

Petitioner has not indicated exactly when he thinks he is eligible for transfer to a CCC, although he requests this Court to order his immediate transfer or a reconsideration of his eligibility date by the BOP.  Petitioner objects to the BOP's refusal to conduct a requested "Individual Character Assessment" in order to consider an earlier transfer date.

Petitioner's habeas petition challenges the validity of the regulations that were used to determine when he is eligible for transfer to a CCC.  The BOP contends that applicable agency regulations properly preclude any inmate–including petitioner–from being assigned to a CCC or home confinement before reaching the final ten percent of his sentence.  Petitioner contends those regulations are invalid, because the applicable federal statutes require the BOP to review his personal circumstances, and make an individual determination of whether he should be released to a CCC before he reaches the last ten percent of his prison term.

## II.   DISCUSSION

### A.   Exhaustion of Remedies

The BOP initially argues that, because Young did not exhaust administrative remedies, he cannot proceed with his petition.  A prisoner ordinarily cannot proceed with a petition for writ of habeas corpus without first exhausting all of the prison's grievance procedures.  *Mason v. Ciccone*, 531 F.2d 867, 869 (8th Cir. 1976).  Exhaustion is not required, however, when the pursuit of administrative remedies would be futile.  *Elwood v. Jeter*, 386 F.3d 842, 844 n. 1 (8th Cir. 2004).  Futility includes circumstances where the resolution of a complaint is categorically controlled by a policy or regulation.  *Fagiolo v. Smith*, 326 F.Supp.2d 589, 590 (M.D.Pa. 2004).

The Court finds that the Petitioner in this case faced futility in the prosecution of his current claims through the BOP's administrative remedy process.  Young is challenging the validity of a BOP policy that the BOP has consistently and steadfastly defended.  The Court finds no reason to believe that the BOP would have reconsidered the validity of its policy if Petitioner had sought relief under the available administrative remedy process.  Moreover, there is no dispute between the parties that BOP regulations

control Petitioner's CCC placement.  Under these circumstances, this Court concludes exhaustion is futile.

*See e.g. United States v. Paige*, 369 F.Supp.2d 1257, 1259 (D.Mont. 2005); *Vargas-Crispin v. Zenk*,

376 F.Supp.2d 301, 303 (E.D.N.Y. 2005); *see also Hayak v. Caraway,* No. 05-1424 (PAM/JSM),

(D.Minn. Dec. 7, 2005), 2005 WL 3334600.[1]   Accordingly, the Court concludes that this action should

not be dismissed on the grounds of non-exhaustion.

### B.      Scope of §2241

Respondent further contends that this action should be summarily dismissed because the relief

Petitioner is seeking is not available by way of a habeas corpus petition.  Respondent correctly states that

a petitioner normally can use the federal habeas corpus statute only to challenge the fact or duration of his

confinement, and not the conditions of his confinement. *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th

Cir. 1996)(per curiam) ("[i]f the prisoner is not challenging the validity of his conviction or the length of his

detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy").  *See also*

*Richmond v. Scibana*, 387 F.3d 602, 605-06 (7th Cir. 2004) (prisoners may not use § 2241 to challenge

CCC placement policies, because such challenges pertain to conditions of confinement).

In this case, Petitioner is not challenging the fact or duration of his confinement; he is challenging

only the BOP policies used to determine <u>where</u> he should be confined.  In *Elwood v. Jeter,* the Eighth

Circuit entertained a § 2241 habeas corpus action challenging a CCC placement policy. 386 F.3d 842.

---

[1] The Court notes that the District Court for the District of Minnesota recently adopted the recommendation of Magistrate Judge J. Mayron in *Hayak v. Caraway*, No. 05-1424 (PAM/JSM), 2005 WL 3334600 (D.Minn. Dec. 7, 2005),  finding the required  exhaustion of remedies to be waived and the BOP regulations invalid.  On January 6, 2006, a similar report and recommendation of the undersigned was adopted in the case of *Ragsdale v. Caraway*, Civil No. 05-1596 by United States District Judge Michael J. Davis, District of Minnesota.

Although the Court of Appeals did not explain why the prisoner should be allowed to challenge the place of his confinement in a habeas corpus action, the Court decided the prisoner's claims on the merits.  Id. This Court finds no material distinction between *Elwood* and the instant case, that would explain why Petitioner Young should be barred from challenging a CCC placement policy in a habeas corpus action, while the prisoner in *Elwood* was permitted to raise similar claims in a habeas petition.  *See Knish v. Stine*, 347 F.Supp.2d 682, 686 (D.Minn. 2004)(Davis, J.) ("[s]ince the Eighth Circuit has recently decided [a] similar claim on the merits, jurisdiction is presumed, and this Court is now obligated to exercise jurisdiction over Knish's petition for § 2241 habeas corpus relief").

In addition, the Court notes that a petitioner may attack the execution of his sentence through a petition of habeas corpus filed pursuant to 28 U.S.C. § 2241, in the district of his incarceration.  *See Matheny v. Morrison*, 307 F.3d 709 (8th Cir. 2002).  The Third Circuit Court of Appeals recently held that a prisoner may bring a challenge to the BOP CCC placement policies in a habeas petition.  *See Woodall v. Federal Board of Prisons*, - F.3d. - , 2005 WL3436626 at *6 (3rd Cir. Dec. 15, 2005) ("[petitioner's] challenge to the BOP's regulations is a proper challenge to the 'execution' of his sentence, and that [therefore] habeas jurisdiction lies").  In addition, many other district courts have allowed prisoners to challenge CCC placement policies in § 2241 habeas cases.  *See e.g. Pimentel v. Gonzales*, 367 F.Supp.2d 365, 370 (E.D.N.Y. 2005); *Franceski v. Bureau of Prisons*, No. 04 CIV. 8667 (LBS) 2005 WL821703 at *3-4 (S.D.N.Y. 2005); *Harris v. Federal Board of Prisons*, No. Civ. A.05-323 RBK 2005 WL 2562970 (D.N.J. Oct. 6, 2005).  Therefore, the Court determines that Petitioner Young should be allowed to challenge the BOP's CCC placement policies in his current petition for writ of habeas corpus.

C.      **Scope of Discretion in Prisoner Placements**

Petitioner Young claims that when he requested an "Individual Character Assessment" seeking to be transferred to a CCC, he was told by Respondent that he is subject to the February 14, 2005 "ten percent" regulation, 28 C.F.R. § 570.21, and his request was categorically denied.  He then argues in relevant part that this regulation violates 18 U.S.C. §3621(b), which requires that prison officials exercise discretion when determining an appropriate facility for the placement of prisoners.  Before proceeding to this issue, it is useful to review the history leading to the promulgation of 28 C.F.R. §570.21.

Longstanding practice at the BOP had permitted certain nonviolent offenders to serve most or all of a sentence at a CCC, particularly at the recommendation of the sentencing judge.  Promulgation of 28 C.F.R. §570, 70 Fed.Reg. 1659, 1659 (Jan. 10, 2005); *Colton v. Ashcroft*, 299 F.Supp.2d 681, 684 (E.D.Ky. 2004).  The Department of Justice Office of Legal Counsel (OLC) issued an opinion in December 2002 that rejected this practice.  70 Fed.Reg. at 1659.

The December 2002 opinion was based on the OLC's interpretation of two statutes.  One of these statutes, 18 U.S.C. §3621(b), sets out the general authority of the BOP to direct the placement of its prisoners:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable, considering
>
> (1)      the resources of the facility contemplated;
>
> (2)      the nature and circumstances of the offense;
>
> (3)      the history and characteristics of the prisoner;

(4)    any statement by the court that imposed the sentence—

        (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B)    recommending a type of penal or correctional facility as appropriate; and

(5)    any pertinent policy statement issued by the Sentencing Commission . . . .

. . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . .

The other statute, 18 U.S.C. §3624(c), supplies criteria for the placement of prisoners in a halfway house:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner . . . spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

In its December 2002 opinion, the OLC reasoned in relevant part that a CCC was not a "place of imprisonment" under §3621(b). It then concluded that §3624(c) was the sole basis by which a prisoner may be placed in a CCC. The BOP implemented this opinion by refusing to consider any CCC placements prior to the last ten percent, not to exceed six months, of a sentence. 70 Fed.Reg. at 1659. But several courts rejected the implementation of the December 2002 opinion, with their decisions following two separate rationales.

Some courts held that a CCC is a "penal or correctional facility" constituting a "place of imprisonment" under §3621(b), and therefore, the BOP has discretion to consider placement of a prisoner at a CCC. Although §3624(c) requires the BOP to supply transitional placements for prisoners at the end

7

of a sentence, it does not otherwise constrain the discretion of the BOP to consider CCC placements at an earlier time. *See, e.g., Elwood,* 386 F.3d at 845; *Goldings v. Winn*, 383 F.3d 17, 21-22 (1st Cir. 2004).

Other courts examined the implementation of the December 2002 opinion under the APA. Because the opinion had the effect of a substantive rule, it was improper for the BOP to adopt it without following notice and comment rule making procedures. *See, e.g., Colton v. Ashcroft*, 299 F.Supp.2d 681, 692-93 (E.D.Ky. 2004); *Monahan v. Winn*, 276 F.Supp.2d 196, 210-11 (D.Mass. 2003); *Ferguson v. Ashcroft*, 248 F.Supp.2d 547, 565 (M.D.La. 2003).

Responding to this scrutiny, the BOP followed APA notice and comment rulemaking procedures and promulgated 28 C.F.R. §570.21. The new rule provided:

> (a)  The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

> (b)  We may exceed these timeframes only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program . . .).

In its comments accompanying the promulgation of this regulation, the BOP recognized its discretion to allow placement at a CCC prior to the period in §3624(c). It stated that, pursuant to this discretion, the BOP had opted to categorically deny any placement in a halfway house prior to this period. 70 Fed.Reg. at 1660.

The BOP added that its exercise of discretion was based on due consideration of all the §3621(b)

factors. 70 Fed.Reg. at 1660. But its comments expressly refer to only one factor, "the resources of the facility contemplated." *See* 18 U.S.C. §3621(b)(1). On this topic the BOP opined,

> Based on its experience, the Bureau has concluded that the resources of [CCCs] make them particularly well suited as placement options for the final portion of offenders' prison terms. This rule is based in part on a closer look at the particular characteristics and advantages of [CCCs] that make them best suited to particular inmates during the last ten percent of the prison sentence being served, not to exceed six months.

70 Fed. Reg. at 1660.

The issue here is whether the new rule violates the statute. Young argues that, because §570.21 categorically rejects early placement at a CCC, the BOP did not exercise the discretion committed to it under §3621(b). The BOP counters that such a categorical rule is within the scope of its discretion.

### 1.      Analysis Under *Lopez*

A similar question was posed to the U.S. Supreme Court in *Lopez v. Davis.* 531 U.S. 230 (2001). This case involved 18 U.S.C. §3621(e), which gives the BOP discretionary authority to reduce the sentences of certain prisoners who successfully complete substance abuse treatment. The BOP promulgated a rule that barred sentence reductions for prisoners who had committed a felony involving a firearm. *Id.* at 233-34.

The Court began its analysis by observing that the BOP, under its reasonable interpretation of the statute, had discretion to reduce prisoners' sentences. *Id.* at 241. It then asked whether the rule, as an exercise of this discretion, was "reasonable in light of the legislature's revealed design." *Id.* (quoting *Nationsbank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

Because §3621(e) did not supply factors controlling the BOP's discretion, the Court determined

that the BOP had broad discretion to develop appropriate factors of its own.  *Id.* at 242-43 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31 (1996) (concluding that, because the Attorney General had unfettered discretion to grant deportation waivers, the Attorney General could properly consider an alien's prior history of entry fraud)).  It also rejected the notion that a categorical rule necessarily signaled a failure of discretion that would make "a nullity of the statute." *Id.* at 243 n. 4.

The Court stated that, in the absence of congressional intent to the contrary, an agency has authority to use rulemaking to resolve "issues of general applicability," *id.* at 243, and cannot be required to "revisit issues that may be established fairly and efficiently in a single rulemaking proceeding," *id.* at 243-44 (quoting *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)) (internal quotation marks omitted).  Because use of a firearm suggests a greater likelihood of violence after release, the Court held that the categorical rule was a permissible exercise of discretion. *Id.* at 244.

Numerous district courts have considered the CCC issue under *Lopez*, and there is a split among them on the issue of whether the categorical rule stated in §570.21 violates the discretion committed to the BOP under §3621(b).  While several of those courts have upheld the BOP's new Rule,[2] there appears to be about an equal number of courts that have found it to be invalid.[3]   Of the courts that upheld the new

---

[2] *See e.g., Yip v. Fed. Bureau of Prisons,* 363 F.Supp.2d 548 (E.D.N.Y.2005); *Moss v. Apker*, 376 F.Supp.2d 416 (S.D.N.Y. 2005); *Eli v. Apker*, NO. 05 CIV. 2703(DC) 2005 WL 2848956 (S.D.N.Y. 2005); *Charboneau v. Menifee*, No. 05 Civ.1900(MBM) 2005 WL 2385862 (S.D.N.Y. 2005); *Morales v. Francis*, NO. CIV.A. H-05-2955 2005 WL 2467691 (S.D.Tex. 2005); *Hurley v. Sherrod*, NO. CIV.A 05CV01177LTBPAC 2005 WL 2141490 (D.Colo. 2005).

[3] *See e.g., Pimintel, supra; Paige, supra; Baker v. Willingham,* NO. 3:04CV1923(PCD)2005 WL 2276040 (D.Conn. 2005); *Drew v. Menifee*, No. 04 Civ. 9944(HBP) 2005 WL 525449 (S.D.N.Y. 2005); *Cook v. Gonzales*, No. Civ. 05-09- AS, 2005 WL 773956 (D. Or. 2005); *Lesnick, supra; Jennings v. Sanders*, NO. 2:05CV00209 HDY 2005 WL2589181 (E.D.Ark. 2005).

CASE 0:05-cv-01476-JNE-JJG   Document 14   Filed 01/13/06   Page 11 of 17

rule, the *Moss* opinion offers the most engaging analysis. *Moss v. Apker*, 376 F.Supp.2d 416 (S.D.N.Y. 2005). It began by determining that §3621(b) supplied broad discretion to the BOP. Reviewing the statements of the BOP during the rule making process, the *Moss* court credited the BOP's representation that the rule was based on due consideration of all of the §3621(b) factors. The court added that, even though the BOP did not expressly mention each factor, the BOP was not required to accord each factor equal weight. Thus a categorical rule, based on the availability of halfway house facilities, was a permissible exercise of discretion. *Id.* at 423-24. In a more summary analysis, the *Yip* court reached a consistent result. *Yip v. Fed. Bureau of Prisons,* 363 F.Supp.2d 548, 552 (E.D.N.Y.2005).

Rejecting the new rule, both *Paige*, and *Pimentel* cited the legislative history of §3621(b) and observed that the statute specifically required the BOP to consider several factors when placing prisoners. *See Paige*, 369 F.Supp.2d at 1262; *Pimentel*, 367 F.Supp.2d at 373-74. Both reviewed the comments of the BOP from the rule making process and, contrary to *Moss*, determined that the BOP did not duly consider each of the §3621(b) factors. *Id.* The *Pimentel* court also recognized that *Lopez* allows categorical rules under some circumstances. *Pimentel*, 367 F.Supp.2d at 375. In order to distinguish *Lopez*, it noted that §570.21 applied to all prisoners and did not identify a factor, such as use of a firearm, that would justify a categorical denial of any early halfway house placements. *Id.*

Thus, the courts in *Paige* and *Pimentel* identify two areas that distinguish §570.21 from the regulation upheld in *Lopez*. First, the statute in *Lopez* does not supply any discrete factors that control the discretion of the BOP. Because the BOP is constrained here by five discrete factors under §3621(b), its discretion is necessarily more limited. Second, the regulation in *Lopez* was based on a factor, use of a firearm, where fairness and efficiency justified a categorical rule. But here §570.21 does not state any

11

comparable factors.   Regardless of prisoners' individual circumstances, all are denied early CCC placements.

Importantly, the Third Circuit Court of Appeals recently issued the first federal appellate court opinion regarding the validity of §570.21. *See Woodall v. Federal Board of Prisons,* -- F.3d. -- 2005 WL3436626 at *8 (3rd Cir. Dec. 15, 2005).   The *Woodall* Court found that §570.21 is invalid because it does not allow the BOP to consider all the factors enumerated in 18 U.S.C. § 3621(b) when making placement decision. *Id.* The Court reasoned that a more narrow reading ignores the context of the statute, and that the statutes use of the word "and" indicates that Congress intended for the BOP to consider all the § 3621(b) factors.  Id. at *7.[4]

This Court is persuaded that the reasoning of *Woodall, Paige* and *Pimentel* is consistent with a careful reading of *Lopez*.  When the BOP promulgated §570.21, it did not review each of the §3621(b) factors, or determine whether these factors supported the implementation of a categorical rule. *See* 70 Fed.Reg. at 1660-61.  Because §570.21 does not fairly resolve whether a prisoner should be considered for placement in a halfway house, the rule exceeds the discretion vested in the BOP under the statute. This Court concludes, therefore, that 20 C.F.R. §570.21 violates 18 U.S.C. § 3621(b).

## 2.    Deference To The BOP Under *Chevron*

The BOP argues that its interpretation of §3621(b) is entitled to deference under *Chervron U.S.A.*

---

[4] In early December, 2005, the Eight Circuit Court of Appeals heard Oral Argument in a similar case, Faults v. Sanders, Appeal No. 05-3490, a case out of the Eastern District Court of Arkansas.  In Fault, the district court determined that the BOP policy was invalid because although it purported to be a categorical exercise of discretion," it was actually not.  "It merely repackaged the December 2002 blanket rule that was rejected in Elwood."  See Fults v. Sanders, 2:05CV00091.  As of the date of this Report and Recommendation, the Court has not yet issued an opinion.

*Inc., v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837 (1984), because 28 C.F.R. § 570.21 was adopted pursuant to notice and comment rule making procedures.  Under *Chevron*, the Court must  give substantial deference to agencies' interpretations of ambiguous statutes when the agencies' interpretations are reasonable, and not "arbitrary, capricious, or manifestly contrary to statute."  467 U.S. at 844.

When reviewing an agency's interpretation of a federal statue, the Court uses a two-step analysis. The threshold question is whether "Congress has directly spoken to the precise question at issue" so that congressional intent is clear.  *Chevron*, 467 U.S. at 842.  An agency is entitled to no deference if Congress has unequivocally expressed its intent in the statute.  *Food and Drug Admin. V. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125-26 (2000); *Chevron*, 467 U.S. at 842-43.  Only "if the statute is silent or ambiguous with respect to the specific issue," will the Court address "whether the agency's answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.

In *Elwood*, the Eighth Circuit recognized that Congress expressed an intent regarding the process by which the BOP should designate prisoners to CCCs.  386 F.3d 845 ("Congress addressed the issue, so we need not look at the agency's interpretation of the statute.").  The *Elwood* Court held that Congress provided the BOP discretion to transfer prisoners to CCC at any time during their incarceration.  <u>Id.</u>  This Court now follows the Courts that have found that Section 3621(b) unambiguously provides that the BOP must consider all of the five factors when making an individualized determination of a prisoners place of confinement, whether that be in prison or in a CCC, and that a regulation providing that the agency may not consider those factors in full is in conflict with the federal statutes.  *See e.g., Woodall*, - F.3d. - , 2005 WL3436626 at *12 (3rd Cir. Dec. 15, 2005) (finding the BOP does not have discretion to refuse to place a prisoner in a CCC for the last six months of his sentence if the exercise of that discretion is not based,

at least in part, on the § 3621(b) factors); *Hayak*, No. 05-1424, 2005 WL 3334600 (D.Minn. Dec. 7, 2005), citing *Lesnick v. Menifee*, No. 05 Civ. 4719 2005 WL 2542908 at * 3 (S.D.N.Y. 2005), (finding congressional intent clear and therefore providing no deference to the BOP's interpretation of Section 3621(b)).

Accordingly, because the 28 C.F.R. § 570.21 disregards the clear mandate of Congress that the BOP consider all five factors of § 3621(b), this Court concludes the BOP's interpretation of the statute is entitled to no deference.

Moreover, even if the Court were to determine § 3621(b) is ambiguous, which it does not, this Court determines that the BOP's interpretation of the statute is arbitrary and not "based on a permissible construction of the statute." *Baker*, 2005 WL 2276040 at *5-6 ("by ignoring some factors, the BOP arbitrarily and unreasonably distinguishes between some prisoners who are in the last ten percent of their sentence and those who are not and between [CCCs] and other federal correctional institutions"); *Woodall,* - F.3d. - , 2005 WL3436626 at *11 (3rd Cir. Dec. 15, 2005) ("We do not believe that the regulations are a permissible construction because they fail to take into account Congress's indications that certain individualized factors ... should be considered in the BOP's placement and transfer scheme").

Section 3621(b) provides specific factors relevant to individualized determinations. The BOP cannot relinquish its responsibility to consider those factors through a categorical rule. Accordingly, the Court concludes the BOP's failure to include all of the statutorily required factors when it promulgated 28 C.F.R. § 570.21 resulted in an arbitrary and capricious exercise of its discretion, *See Hayak,*(D.Minn. Dec. 7, 2005), 2005 WL 3334600 (Magnuson, J.), and regulations that are not "reasonable in light of the legislatures's revealed design." *Woodall,* - F.3d. - , 2005 WL3436626 at *11 (3rd Cir. Dec. 15, 2005).

14

The Court finds the BOP cannot successfully pass the two-step *Chevron* analysis, and is therefore not entitled to the deference of the Court regarding 28 C.F.R. § 570.21.

### 3.     28 C.F.R. §§ 570.21 Invalid

For all of these reasons, the Court concludes that 28 C.F.R. § 570.21 is invalid. Accordingly, the BOP cannot rely on § 570.21 to categorically exclude all federal prisoners from being assigned to CCCs until they reach the last ten percent of their sentence to be served. The Eighth Circuit has already ruled that neither § 3621(b) nor § 3624(c) precludes prisoners from being assigned to CCCs at any time. *Elwood*, 386 F.3d at 846-47. This Court now finds that § 3621(b) requires the BOP to consider the five factors listed in the statute when deciding whether, and when, a prisoner should be assigned to a CCC or home confinement arrangement.

Consequently, the Court finds that the BOP can not properly use § 570.21 to automatically bar Petitioner Young from a CCC placement before he reaches the last ten percent of his sentence. The BOP should be required to reconsider its decision regarding when Petitioner Young should be assigned to a CCC, without regard to the categorical directive of 20 C.F.R. § 570.21.

The Court specifically notes, at this juncture, that a determination that § 570.21 is invalid does not entitle Petitioner Young to placement in a CCC. The BOP will continue to have broad discretion to decide whether and when Petitioner should be assigned to a CCC. However, that discretion must be exercised based on the factors prescribed in § 3621(b), and without regard to the absolute mandate set forth in 28 C.F.R. §§ 570.21.

Accordingly, this Court recommends that Petitioner be granted a writ of habeas corpus that directs the BOP to reconsider the date when Petitioner should be assigned to a CCC, in light of the criteria set

forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.21 and .21.

      **D.**      **Petitioner's Motion for Writ of Mandamus**

      Petitioner's Motion for Writ of Mandamus seeks a writ from the Court directing the Warden at Federal Prison Camp Duluth to conduct an "Individualized Character Assessment" to determine if he is qualified for CCC placement.  The Court notes that mandamus is an extraordinary remedy reserved for extraordinary situations.  *See In re MidAmerica Energy Co.*, 286 F.3d 483, 486 (8th Cir. 2002) (citing *Gulfstram Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988).  The writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.  *Taylor v. Barnhart*, 399 F.3d 891, 894 (8th Cir. 2005).

      Because this Court recommends that Petitioner's request for a writ of habeas corpus be granted with the direction to the BOP to reconsider the date when Petitioner should be assigned to a CCC, and to do without regard to regulations Petitioner has challenged in his petition, 28 C.F.R. §§ 570.21 and .21, the Court finds that Petitioner has received the remedy he seeks.  Accordingly, the Court recommends Petitioner's Motion for Writ of Mandamus be denied as moot.

**III.**      **CONCLUSION**

      Based upon the forgoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

      (1) Petitioners application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket No. 1) be **GRANTED**, and that Respondent be directed to reconsider the date when Petitioner should be assigned to a Community Corrections Center or home confinement, in light of the criteria set forth in 18

U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and .21.

     (2) Petitioner's Motion for Writ of Mandamus (Docket No. 2) be **DENIED AS MOOT**.


Dated:  January 12, 2006                 s/Jeanne J. Graham


                                 _____
                                   JEANNE J. GRAHAM
                                   United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by February 2, 2006.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.